IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ALEXANDRA K. WEISHAUPT           )
                                 )
          Plaintiff,             )
                                 )
     v.                          )      1:11-cv-1122
                                 )
BOSTON COLLEGE and TRUSTEES OF   )
BOSTON COLLEGE,                  )
                                 )
          Defendants.            )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Alexandra K. Weishaupt ("Weishaupt") brings this action for damages for injuries she suffered while participating in a cheerleading performance during a college football game away from campus. Before the court is the motion of Defendants Boston College and Trustees of Boston College ("Boston College")[1] to transfer the action to the District of Massachusetts pursuant to 28 U.S.C. § 1401(a). For the reasons set forth here, the motion will be granted.

**I. FACTS**

Boston College is an educational institution formed under the laws of the state of Massachusetts with its principal place of business in Chestnut Hill, Massachusetts, just outside the

---
[1] Defendants note that Trustees of Boston College is the true legal name of the educational institution, which is frequently referred to as Boston College for shorthand.

city of Boston.  Weishaupt enrolled at the college in September 2006 and became a member of its cheerleading squad.  On November 22, 2008, she travelled with the cheerleading squad to Wake Forest University in Winston-Salem, North Carolina, to perform at a regularly-scheduled NCAA football game between the two schools.  While participating in a "3-person high pyramid," Weishaupt was injured when a spotter failed to catch her upon her dismount, and her head hit the ground.  Thereafter, she was treated at the Wake Forest University Baptist Medical Center in Winston-Salem and returned to Boston.  She continued to receive treatment in Boston, graduated from Boston College, and worked for a local television station.  At some point she moved to Salt Lake City, Utah, where she currently lives and works for a television station.

Weishaupt filed this action on November 17, 2011, in the General Court of Justice, Superior Court Division, in Forsyth County, North Carolina.  (Doc. 5.)  She alleges that Boston College was negligent for, principally, failing to properly supervise the activity, failing to provide adequate experienced cheerleaders and instructors, failing to make proper arrangements to allow for an early arrival of the squad and proper rest, failing to provide a qualified spotter, failing to properly instruct the squad and train the coaches, and failing otherwise to act reasonably.  (Id. ¶ 21.)

2

Boston College timely removed the action to this court (Doc. 1) and brought the instant motion to transfer venue to the District of Massachusetts based on the convenience of the parties and witnesses (Doc. 11).[2]

**II. ANALYSIS**

Section 1404(a) authorizes a district court to transfer an action "[f]or the convenience of parties and witnesses [and] in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The statute sets forth a two-step process for determining whether to transfer a case.  First, the court must determine whether the action could have been brought in the district to which the defendant seeks a transfer.  Cable-La, Inc. v. Williams Commc'ns, Inc., 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999).  "After determining that a suit could have been brought in another district, the court must determine whether that forum is a legally convenient one pursuant to 28 U.S.C. § 1404(a)."

---

[2] Though the complaint alleges damages "in excess of $10,000," the jurisdictional threshold of the state court, N.C. Gen. Stat. § 1A-1, Rule 8(a)(2) (2011), Boston College's notice of removal states that Weishaupt seeks more than $75,000, the jurisdictional threshold of this court.  (Doc. 1 ¶ 5.)  In light of the complaint's allegation of "serious" and "permanent" brain injury causing "permanent cognitive disorder" that necessitated continuous neurological treatment (Doc. 5 ¶¶ 20, 22-24), the court finds that it is highly likely that the amount in controversy exceeds $75,000.  Doe v. Bayer Corp., 344 F. Supp. 2d 466, 469 n.2 (M.D.N.C. 2004).

3

Knight Med., Inc. v. Nihon Kohden Am., Inc., 765 F. Supp. 291, 292 (M.D.N.C. 1991).

In considering a motion to transfer under section 1404(a), a court should make "an individualized, case-by-case consideration of convenience and fairness," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted), including the weighing of the following discretionary factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (citation omitted). "The moving party bears the burden of proving that the balance of these factors weighs in favor of transfer." Sweeney v. Pa. Nat'l Mut. Cas. Ins. Co., No. 1:05CV00931, 2007 WL 496699, at *2 (M.D.N.C. Feb. 27, 2007) (citation omitted). "[T]he analysis of these factors is qualitative, not merely quantitative." Commercial Equip. Co. v.

4

Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990). A "court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another." Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 841 F. Supp. 719, 721 (M.D.N.C. 1993) (citation omitted).

The parties do not dispute that this action "might have been brought" in the District of Massachusetts. Boston College resides in Massachusetts, and venue exists pursuant to 28 U.S.C. § 1391(a). Diversity jurisdiction also exists in that district pursuant to 28 U.S.C. § 1332(a)(1) insofar as Weishaupt is a citizen of Utah[3] and Boston College is a citizen of Massachusetts.

The inquiry, then, is the weighing of the transfer factors. The parties agree that not all are implicated in this case. Those that apply are addressed in turn below.

**A. Plaintiff's Initial Choice of Forum**

A plaintiff's choice of forum generally is "entitled to respect and deference," Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC (In re Carefirst of Md., Inc.), 305 F.3d 253, 260 (4th Cir. 2002), and "should rarely be disturbed" unless the balance is strongly in favor of the defendant.[4]

---

[3] The notice of removal alleges that Weishaupt is a citizen of Utah, a fact that she does not contest. (Doc. 1 ¶ 3.)

[4] Section 1404(a) "is more lenient in authorizing transfers than is the common law doctrine of forum non conveniens." Akers v. Norfolk &

Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citation and internal quotation marks omitted). This choice receives less weight, however, when (1) the plaintiff chooses a foreign forum, or (2) the cause of action bears little or no relation to the chosen forum. Harris v. Nussbaum, No. 1:97CV01029, 1998 U.S. Dist. LEXIS 15144, at *10-11 (M.D.N.C. June 19, 1998); see Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("[T]he deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action").

Here, Weishaupt points to the fact that she was injured in this district and taken to Wake Forest University Baptist Medical Center in Winston-Salem, where she was initially evaluated. While true, the court should also look to the Plaintiff's theories of liability and the potential defenses. Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (citing 17 James Wm. Moore et al., Moore's Federal Practice, § 111.13[1][d][ii] (3d ed. 2012)). The allegations of her complaint make clear that, although she was injured here, the acts and omissions that serve as the bases of her claim

---

Western Ry. Co., 378 F.2d 78, 79 (4th Cir. 1967) (per curiam) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955)); La Casa Real Estate & Inv., LLC v. KB Home of S.C., Inc., No. 1:09CV895, 2010 WL 2649867, at *2 (M.D.N.C. June 30, 2010). However, some courts continue to appear to refer to a showing that the balance of factors "strongly . . . favor[s]" a transfer. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984).

occurred largely, if not exclusively, in Massachusetts. That is, she blames the decision-making of the Boston College staff in sending the cheerleading squad, sending substitute cheerleaders, and failing to provide experienced cheerleaders and instructors, including a spotter. (Doc. 5 ¶¶ 10-13.) She also blames the college for failing to make proper arrangements to allow for an early arrival of the squad and proper rest, failing to properly instruct the squad and train the coaches, and failing to properly supervise the activity. (Id. ¶ 21.) All but the last are acts and omissions that are alleged to have occurred in Massachusetts prior to the squad's trip to North Carolina.

Moreover, Weishaupt presently lives and works in Salt Lake City, Utah. (Id. ¶ 1.) Except for her evaluation at the emergency room immediately after the accident, all of her subsequent medical treatment was rendered in Massachusetts or New York, and a significant portion of the alleged consequence of her injury manifested in Massachusetts while she attended Boston College. While her choice of forum is entitled to deference, it is substantially lessened in this case where virtually all of the facts that underlie her cause of action, both as to liability and damages, occurred in Massachusetts.

7

**B. Ease of Access to Sources of Proof**

In weighing this factor, courts consider the relative ease of access to witnesses and other evidence for trial. Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703 (M.D.N.C. 2007); Parham, 323 F. Supp. 2d at 674. Courts also examine the number and materiality of witnesses. See Piedmont Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc., 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005).

Weishaupt argues that her treatment at the Wake Forest University Baptist Medical Center immediately after the accident and the residence of her retained liability expert in the district make this forum more convenient. She notes that her expert, Herb Appenzeller, Ed.D., contends it would be "'difficult[] . . . [to] travel[] out of state'" (Doc. 15 at 5 (quoting Doc. 15-2 at 2)) and thus "it would be more convenient" for him if this case remained in North Carolina (Doc. 15-2 at 2). And although she lives and is employed in Utah and her treating neurologist, Michael I. Weintraub, M.D., practices in New York and teaches at New York Medical College, she notes that he would be willing to travel to North Carolina to testify or, in the alternative, provide video testimony. (Doc. 15-1 at 3.)

Boston College, on the other hand, has demonstrated that nearly all of the liability and damages witnesses in this case reside in or near Massachusetts. Weishaupt's two cheerleading

8

coaches for the 2008-09 season currently reside in Massachusetts. (Doc. 12-6 ¶ 4.) Boston College represents that they will have information about the coaching Weishaupt received, the skills of the squad, personnel decisions alleged in the complaint, and her physical condition and recovery following the November 22, 2008 accident. (Id.) In addition, the squad trainer and doctor both reside in Massachusetts. (Id. ¶ 5) They are expected to have information about Weishaupt's recovery and decision to clear her medically to continue participating in cheerleading at Boston College after the accident. (Id.) All of Weishaupt's faculty, including the Director of the Academic Advising Center, who can testify to her academic performance and who assisted with academic accommodations after her injury also reside in Massachusetts. (Id. ¶ 6.)

It also appears that the vast majority of the members of the 2008-09 cheerleading squad live in or near Massachusetts. Seventeen of the members of the 2008-09 squad reside in Massachusetts. (Id. ¶ 3.) Eight more reside in the Northeast (New York, New Jersey, Pennsylvania, Connecticut, and other Northeastern states). (Id.) None lives in North Carolina. (Id.) These members may have information about the skills and training of the squad, their practice and preparation leading up to the day of the accident, and the level of supervision they

9

received.  (Id.)  They may also have information about Weishaupt's recovery and later participation in the cheerleading squad.  (Id.)  Importantly, members of the 2008-09 squad should have information as to the one aspect of the case that involves conduct that allegedly occurred in North Carolina:  the alleged failure of Boston College to provide proper supervision of the squad during the performance at issue.

Finally, in addition to receiving treatment from the squad trainer and physician, Weishaupt also received treatment from Beth Israel Deaconess Medical Center in Boston and from doctors in Kingston and Briarcliff (Manor), New York.[5]  (Id. ¶¶ 5, 7-8.)  She was also referred to a psychologist in Boston.  (Id. ¶ 8.)  After her injury, Weishaupt continued to live in Boston, where she attended Boston College and worked at a local television station.  (Id. ¶ 9.)  Thus, most of the witnesses in her case, including her current treating physician, Dr. Weintraub, can be found in or much nearer to the District of Massachusetts than to the Middle District of North Carolina.

---

[5] Kingston and Briarcliff Manor are approximately 204 and 190 driving miles, respectively, from Boston.  Bing Maps, http://www.bing.com/maps (follow "Directions" hyperlink; then type "Kingston, NY" or "Briarcliff Manor, NY" and "Boston, MA" in the text fields; then follow the "Go" hyperlink).  Boston College also represents that hospital records from Beth Israel Deaconess Medical Center reveal that Weishaupt may have suffered head trauma during her freshman year at Boston College, a year before the accident (Doc. 12-6 ¶ 7), thus underscoring the potential importance of the facility's doctors to the case.

10

Weishaupt argues that transferring the case to Massachusetts would simply shift the inconvenience from Boston College to her. But that is not the case. Weishaupt must travel across the country no matter which venue is selected. Apart from the emergency room treating physicians in Winston-Salem, only her retained expert may bear some inconvenience. Yet, the convenience of expert witnesses is generally "of little or no significance on a motion to transfer." 17 Moore et al., supra § 111.13[1][f][iv] (citation omitted); see also Ventress v. Radiator Specialty Co., Civ. A. No. 11-1419, 2012 WL 1247205, at *3 n.1 (E.D. La. Apr. 13, 2012) (noting that expert witnesses are given "little weight" in the transfer determination, citing cases). Moreover, as Boston College demonstrates, Dr. Appenzeller travels as part of his consulting practice, including recent speaking engagements in Boston on April 29, 2011, and in Daphne, Alabama, on November 11, 2011. (Doc. 16-3; Doc. 16-4.) His curriculum vitae posts an extensive list of locations around the nation where he has given presentations and served as a consultant. (Doc. 15-2.)

Thus, this factor favors transfer to the District of Massachusetts.

**C.  Availability of compulsory process for attendance of unwilling witnesses and associated cost**

Under Federal Rule of Civil Procedure 45, a district court has the power to subpoena fact witnesses (who are not parties or their officers) within 100 miles of the place they reside, are employed, or regularly transact business, and for a subpoena requiring attendance at trial, within a state.  Fed. R. Civ. P. 45(c)(3)(A)(ii).  Consequently, this district would have the power to subpoena only the physicians from Wake Forest University Baptist Medical Center who treated Weishaupt on November 22, 2008.  However, the District of Massachusetts would have subpoena power over a significant number of potential fact witnesses living in the district, as well as many physicians.  Thus, this factor favors transfer.

**D.  Local Interest**

Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events.  In re Volkswagen of Am. Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  Although the accident occurred in this district, the theory of liability rests almost exclusively on alleged acts and omissions in Massachusetts.  The District of Massachusetts is the location of Boston College's principal place of business, the site of the alleged training and supervision deficiencies, the residence of

virtually all liability witnesses, and the location of virtually all evidence. Thus, this action is far from a localized controversy. Weishaupt argues that this district has an interest in applying North Carolina law. However, to the extent such law applies to claims arising out of acts and omissions in Massachusetts (an issue this court does not decide), there is no indication that North Carolina law is unique in this regard or that anything other than ordinary tort principles will apply. This factor therefore does not favor retention in this district.

    **E.    View of Premises**

Weishaupt argues that it may request a view of the premises. Jury views of the premises are rarely necessary, however, and in this case the location of the accident is unlikely to bear any significant relation to the claims. The complaint does not implicate the site or condition of the field in any manner in alleging liability. Rather, the focus is on training and decision-making related to personnel. Indeed, the theory of the complaint is that this accident could have happened anywhere, because of the acts and omissions of the Boston College staff. Accordingly, this factor does not favor retention of the action in this district.

    **F.    Other Practical Problems and Remaining Factors**

Weishaupt argues that although she, her father, and her uncle graduated from Boston College, she fears that a Boston

jury would not be impartial because of the "influence which this university would undoubtedly have on a potential jury pool." (Doc. 15-1 at 3.) She also notes that her North Carolina counsel represent her on a contingency basis. Given that she has over $100,000 in student loan debt, she contends, she cannot afford to hire a new law firm unless it were to represent her on a contingency arrangement as well. Because her current counsel would be entitled to a lien on any recovery to the extent of the work they have performed to date, Weishaupt contends, she is concerned whether she could find a competent lawyer who would be willing and able "to fight Boston College's well financed legal talent." (Id. at 4.)

Needless to say, both of these concerns are speculative, at best, on this record. There is no evidence that Weishaupt will have any trouble seating a fair and impartial jury in the District of Massachusetts. Ventress v. Japan Airlines, 486 F.3d 1111, 1119 (9th Cir. 2007) (finding no abuse of discretion in the district court's decision to transfer venue under section 1404(a) where the plaintiff's "assertion of bias on the part of [the transferee district's] jury pool [was] not supported by any evidence in the record"); see also ASAI, Inc. v. Guest + Reddick, Inc., No. 09-0041-CV-W-FJG, 2009 WL 1657436, at *4 (W.D. Mo. June 10, 2009) (holding that a section 1404(a) transfer was appropriate despite plaintiff's claims of potential

jury bias where voir dire would be able to root out jurors with any bias).

In addition, the record is devoid of any information supporting her claim that she will face difficulty retaining competent counsel. Compare Mims v. Proctor & Gamble Distrib. Co., 257 F. Supp. 648, 657 (D.S.C. 1966) (granting defendants' motion to transfer venue under section 1404(a) and noting that "the fact that the plaintiff may be required to hire additional attorneys in the transferee forum should not be given weight"), with DeFazio v. Hollister Emp. Share Ownership Trust, 406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005) (noting as a factor in denying defendants' motion to transfer venue that a transfer could increase the plaintiff's litigation costs by requiring him to obtain new legal representation). See also McKeever v. Israel, 689 F.2d 1315, 1324 (7th Cir. 1982) (Posner, J., dissenting) ("Where damages are sought, the [plaintiff] should have no difficulty finding a lawyer willing to take his case on a contingent-fee basis, provided the case has some merit."). Here, the United States District Court for the District of Massachusetts provides a procedure for out-of-state counsel to practice pro hac vice. See Local Rule of the United States District Court for the District of Massachusetts 83.5.3(b); see also United States ex rel. Haight v. Catholic Healthcare West, No. C-01-1202 PJH, 2001 WL 1463792, at *2 (N.D. Cal. Nov. 9,

2001) (granting defendants' motion to transfer venue under section 1404(a) despite relators' difficulty in obtaining counsel where the transferee district had procedures for out of state attorneys to practice pro hac vice). So, while Weishaupt's college loan debt is significant, there is no indication that she would be unable to associate local counsel in Massachusetts on a contingency basis either to handle the case or to assist her current attorney in doing so.

Weishaupt's concerns are not supported in the record, and no other significant practical problem has been identified by either party in evaluating the requested transfer.

### III. CONCLUSION

Based on a consideration of the relevant factors, the court concludes that Boston College has demonstrated that the convenience of the parties and witnesses and the interests of justice strongly favor transfer of this action to the District of Massachusetts.

NOW, THEREFORE, IT IS ORDERED that Defendants' motion to transfer venue (Doc. 11) is GRANTED, and this action is TRANSFERRED to the District of Massachusetts.

/s/ Thomas D. Schroeder
United States District Judge

April 24, 2012